ACCEPTED
03-12-00247-CV
5480460
THIRD COURT OF APPEALS
AUSTIN, TEXAS
5/29/2015 6:05:07 PM
JEFFREY D. KYLE
CLERK

## NO. 03-12-00247-CV

IN THE COURT OF APPEALS
FOR THE THIRD JUDICIAL DISTRICT OF TEXAS
AT AUSTIN

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
5/29/2015 6:05:07 PM
JEFFREY D. KYLE
Clerk

**ROLAND OIL COMPANY**,      Appellant,

VS.

**RAILROAD COMMISSION OF TEXAS**,      Appellee.

On Appeal from the 353rd Judicial District Court
Travis County, Texas
Trial Court No. D-1- GN-08-003472

### APPELLANT'S MOTION FOR REHEARING

JEFFREY R. AKINS
14350 Northbrook Drive, Suite 150
San Antonio, Texas 78232
Telephone: (210) 599-4905
Facsimile: (210) 490-2776
jrakins@sbcglobal.net

**COUNSEL FOR APPELLANT**

May 26, 2015

**NO. 03-12-00247-CV**

IN THE COURT OF APPEALS FOR THE THIRD DISTRICT
AUSTIN, TEXAS

ROLAND OIL COMPANY,

Appellant,

VS.

RAILROAD COMMISSION OF TEXAS,

Appellee.

On Appeal from the 353rd Judicial District Court, Travis County, Texas
Trial Court No. D-1-GN-08-003472

**APPELLANT'S MOTION FOR REHEARING**

TO THE HONORABLE COURT OF APPEALS:

ROLAND OIL COMPANY submits this motion for rehearing in response to the

opinion issued by the Court on February 27, 2015, and requests that the Court consider

the following issues:

**ORAL ARGUMENT REQUESTED**

The court should grant oral argument for the following reasons:

a.      Oral argument would give the court a more complete understanding of the facts and law presented in this appeal.  This case involves the interpretation of a unit agreement for a secondary recovery unit (water injection) in which the unit is treated as one well.  This is a different animal than a pooled unit.  It involves an administrative agency acting as a defacto court of law as to ones standing to operate, under a threshold standard "good faith claim."  Moreover, the court has written two opinions with two different results.  The combination of the number of these amendments (a total of eight),  the number of different parties to these amendments due to several assignments of the 1966 lease, and the contradictory lease terms, can be confusing.

b.      Oral argument would allow the Court to better analyze the complicated legal issues presented in this appeal.  For example, how far does the "good faith claim" rule allow the RRC to go in its inquiry.

**ISSUES PRESENTED FOR REVIEW**

1.      After prompting by an unhappy landowner the Texas Railroad Commission ("RRC" or "Commission") exceeded its statutory authority (jurisdictional) by using the "good faith claim to title" standard as a Trojan Horse to act as a defacto court of law to punish an operator it did not like.  It applied law on a micro level far beyond its own "good faith claim" threshold.

2. While there can be arguments on both sides of the question of whether the force majeure clause applies, the RRC, in the absence of any case law precedent to do so, acted as a court of law in concluding force majeure did not apply. A detailed analysis of the clause should first occur at a trial court that is actually adjudicating the validity of a lease and then come to this court rather than from detailed analysis by the RRC.

3. Regretfully, the Opinion incorrectly assumes (it seems) that the unit in question is in primary recovery mode (that is producing wells by natural pressure and/or pumping alone) when in fact this unit was formed for the purposes of secondary recovery (i.e., water injection) and is treated as one well for unit production purposes. This is a key distinction.

4. Regretfully, the Opinion incorrectly assumes that the wells in question were to be plugged after the repairs and testing were completed by Roland. Instead, the purpose of testing is to show the RRC that the wells are structurally sound so that a plugging extension can be given. Plugging of wells does not require prior testing and repairs.

5. Regretfully, the Opinion incorrectly assumes that because the wells in question remained inactive after the RRC severance lifted in August 2006 that this meant that Roland had no intention of producing these wells or using them as water injection wells. This assumption was key to the court's ruling that the repairs and testing did not constitute "operations."

6. Regretfully, the Opinion incorrectly assumes that these wells, now with plugging extensions granted in August 2006, do not contribute to the development of the unit. Wells on a secondary recovery unit generally are not plugged until the entire unit terminates, because due to advances in technology or changes in oil prices, the inactive wells can later be activated.

7. Because the RRC exceeded its own rule (and jurisdiction) in deciding this matter, the court should apply the de novo standard of review for determining whether Roland satisfied a good faith claim threshold.

## ARGUMENT AND AUTHORITIES

1. After prompting by an unhappy landowner the Texas Railroad Commission ("RRC" or "Commission") exceeded its statutory authority (jurisdictional) by using

3

the "good faith claim to title" standard as a Trojan Horse to act as a defacto court of law to punish an operator it did not like. It applied law on a micro level far beyond its own "good faith claim" threshold.

From the Proposal for Decision (PFD) we know that a mineral owner in the North Charlotte Unit contacted the RRC and questioned the validity of Roland's lease with him. This triggered a "good faith claim" inquiry by the RRC. CR 96. It is a reasonable inference that the RRC did not care for Roland as an operator based on the PFD background summary. Further, it is clear that the RRC engaged in great substantive analysis to conclude that a good faith claim did not exist. See PFD. While different interpretations of key clauses can be advanced by a lessor or lessee, the RRC decided how these clauses should be interpreted. Its good faith claim standard should be limited to 1) is there a lease, 2) can a good faith claim be made that the lease is valid.

2. While there can be arguments on both sides of the question of whether the force majeure clause applies, the RRC, in the absence of any case law precedent to do so, acted as a court of law in concluding force majeure did not apply. A detailed analysis of the clause should first occur at a trial court that is actually adjudicating the validity of a lease and then come to this court rather than from detailed analysis by the RRC.

Depending on how one interprets the force majeure clause, this court may be correct in its detailed analysis in which it concludes the clause does not apply. But the correctness of this court's conclusion is not the issue; rather it is that the PFD goes so far as to act like a court and think like a court when it decides the issue with no case

4

law precedent whatsoever in the appellate courts for the a) county in which the land is located, or b) in Travis County. It looked only to cases outside these jurisdictions, one of which was favorable to Roland. CR 99-100.

3. Regretfully, the Opinion incorrectly assumes (it seems) that the unit in question is in primary recovery mode (that is producing wells by natural pressure and/or pumping alone) when in fact this unit was formed for the purposes of secondary recovery (i.e., water injection) and is treated as one well for unit production purposes. This is a key distinction.

What the court thought on this is not clear, but the latter part of the opinion does not recognize that an inactive well has value on a secondary recovery unit.

The Unit Agreement itself states in the second paragraph that it is for secondary recovery CR 195. It also shows that the entire unit is treated as one well, as all owners are allocated a share of total unit production. See Article 5, Tract Participation. CR 198.

4. Regretfully, the Opinion incorrectly assumes that the wells in question were to be plugged after the repairs and testing were completed by Roland. Instead, the purpose of testing is to show the RRC that the wells are structurally sound so that a plugging extension can be given. Plugging of wells does not require prior testing and repairs.

See Opinion at page 17 (". . . repairs and testing on the lease's inactive wells in preparation for their being plugged"). The PFD states that the work done was to obtain plugging extensions. See PFD FOF 4 and 15. CR 104-105. Roland would not have done this work if it was not necessary to be done for plugging (by reasonable

5

inference).  With plugging extensions the wells can later be used in secondary recovery operations.

5.      Regretfully, the Opinion incorrectly assumes that because the wells in question remained inactive after the RRC severance lifted in August 2006 that this meant that Roland had no intention of producing these wells or using them as water injection wells.  This assumption was key to the court's ruling that the repairs and testing did not constitute "operations."

See Opinion at pages 17-18.  The PDF states that at about the time the severance was lifted, the RRC began its good faith claim inquiry.  CR 96.  A reasonable inference is:  why should Roland add equipment to wells or reactivate _____ wells if its ability to operate these wells is under scrutiny.  They did remain inactive, but this does not prove they were never intended for production.

6.      Regretfully, the Opinion incorrectly assumes that these wells, now with plugging extensions granted in August 2006, do not contribute to the development of the unit. Wells on a secondary recovery unit generally are not plugged until the entire unit terminates, because due to advances in technology or changes in oil prices, the inactive wells can later be activated.

Well plugging extensions speak for themselves as to a secondary recovery unit. The RRC cites no rule that wells with extensions must be placed into service immediately.  The RRC cites no rule or engineering practice that say inactive wells cannot later come into play as a unit.

7.      Because the RRC exceeded its own rule (and jurisdiction) in deciding this matter, the court should apply the de novo standard of review for determining whether Roland satisfied a good faith claim threshold.

Appellant believes this issue speaks for itself, based on the prior issues and argument.

## PRAYER FOR RELIEF

For the reasons stated in this motion, Appellant asks the court to grant this motion for rehearing, withdraw its opinion, reverse the trial court's judgment, and either render judgment for Appellant or reverse and remand for a new trial

Respectfully submitted,

By: /s/ Jeffrey R. Akins
JEFFREY R. AKINS
State Bar No. 00962425
14350 Northbrook Drive, Suite 150
San Antonio, Texas 78232
Telephone: (210) 599-4905
Facsimile: (210) 490-2776
**ATTORNEY FOR APPELLANT**,
**ROLAND OIL COMPANY**

## CERTIFICATE OF COMPLIANCE

This motion complies with the volume limitation of Tex. R. App. P. 9.4 because it contains 973 words, excluding the parts of the motion exempted by Tex. R. App. P. 9.4(i)(l).  The undersigned relied on the word count of MS Word, the computer program used to prepare the brief.

/s/ Jeffrey R. Akins
Jeffrey R. Akins

7

# CERTIFICATE OF SERVICE

I hereby certify that, on the 26TH_day of May, 2015, a true and correct copy of the above and foregoing document has been served upon the following counsel of record, electronically through an electronic filing service provider.

Anthony  W. Benedict
Assistant Attorney General
Natural Resources Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
Anthony.benedict@texasattorneygeneral.gov
Counsel for Railroad Commission of Texas

Dario Bargas
Bargas Law Firm
1000 Heritage Center Circle
Round Rock, Texas 78664
Counsel for Appellant


/s/ Jeffrey R. Akins
_____
Jeffrey R. Akins